Walter MONTGOMERY, Petitioner–Appellant,

v.

James GREER, Warden, Respondent–Appellee.

No. 89–2391.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1991.

Decided Feb. 10, 1992.

Frederick F. Cohn (argued), Chicago, Ill., for petitioner-appellant.

Arleen C. Anderson, Sally L. Dilgart, Terence M. Madsen (argued), Asst. Attys. Gen., Crim. Appeals Div., Chicago, Ill., for respondent-appellee.

Before CUMMINGS, RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

In 1981, after a bench trial in the Cook County (Illinois) Circuit Court, Petitioner Walter Montgomery was convicted of rape. In 1988 he filed a petition for writ of habeas corpus challenging his conviction. The district court denied relief. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.  *Facts*

On November 17, 1976, at approximately 3 a.m., the victim left her apartment in Chicago after a disagreement with her fiance. Shortly afterwards, as she was walking down the street, a man grabbed her from behind. The man slipped a blindfold over her eyes and then held a large knife to her face. He then pushed her into the backyard of a nearby house and raped her. The yard where the rape occurred was poorly lighted, although some illumination did come from streetlights and a nearby hospital. The victim testified that, despite the blindfold, she saw her attacker at three different points during the crime, when she was able to look out from under the blindfold and see his face. At those points, according to the victim, the assailant was kneeling at her feet as she lay on the ground.

After the attacker fled, the victim walked to the emergency room of the neighboring hospital. There she spoke to police officers and described her assailant as a cleanshaven black man with a short afro haircut. She did not attempt to quantify the man's height and weight; instead she described him as "very large" and "huge." Tr. at 55. Upon further questioning, the victim, who was 5′4″ tall, raised her hand as high as she could and said that he was "about that tall or taller." *Id.* at 55–56. The interviewing police officer reported that the attacker was 6′ to 6′1″ tall and over two hundred pounds. During her interview the victim stated that there was no doubt in her mind that she could identify the man again.

On November 19, 1976, the victim viewed a line-up that did not contain the defendant; she did not identify anyone as her assailant. That same day, while out of the presence of police officers, she reviewed a number of mug books and loose photos. She identified Mr. Montgomery from one of the loose photos. She stated at that time that she was not completely sure of her identification because the man in the photograph had a beard, and that she would be more certain if she could see the man in person and listen to his voice. The police did not record which loose photographs they showed the victim, but only retained the

**679**

photograph of Mr. Montgomery that she identified.[1]

On November 27, 1976, police officers arrested Mr. Montgomery after making a warrantless entry into his home.[2] After his arrest, the police put him in a line-up, and the victim identified him as her assailant. At the time of his arrest Mr. Montgomery was 6'5" and weighed between 245 and 275 pounds. He was substantially larger than any other participant in the line-up, and was the only person who was clean-shaven. The victim testified at trial that she did not know that the man whose photograph she had selected on November 19 would be in the line-up. She also stated that when she identified Mr. Montgomery in the line-up, she did not realize that she had seen his photograph before.

The state trial court suppressed evidence of the post-arrest line-up identification on the ground that it was the fruit of an unlawful arrest. *See Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, it denied a motion to suppress the photo identification, although it characterized the police's failure to retain the photos as "slip-shod" and "unprofessional." Tr. at 158. It also denied a motion to suppress any in-court identification. After a lengthy evidentiary hearing, the court held that the victim's in-court identification was sufficiently independent of the post-arrest line-up to avoid suppression. Among the factors that the court looked to in finding an independent source for the identification were the ability of the victim to see her assailant, her statement in the emergency room that she was sure she could identify him again, and her photo identification of Mr. Montgomery.

Based on the in-court identification and circumstantial evidence, the court found Mr. Montgomery guilty of rape, and he received a sentence of imprisonment for forty years to life. The Illinois Appellate Court affirmed his conviction in an unpublished opinion, and the Illinois Supreme Court denied leave to appeal.

### B. *District Court Proceedings*

Having exhausted his state remedies, Mr. Montgomery filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Illinois. He raised three issues. He argued, first, that the trial court impermissibly considered the photo identification in determining whether the in-court identification was influenced by the suppressed post-arrest line-up. Because the police did not retain a list of the photos that it showed to the victim, he argued, the photo identification was unconstitutionally suggestive and therefore should have been suppressed. Second, he contended that the trial court failed to hold an adequate hearing to determine the suggestiveness of the photographic identification. Third, he argued that the in-court identification itself was unconstitutional because it was based on the photo identification and the suppressed post-arrest line-up.

The district court rejected all of these arguments. It held, first, that Mr. Montgomery's claim that the photo identification was unconstitutional was untenable in light of the Supreme Court's decision in *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988), that the failure of the police to retain potentially exculpatory evidence will not violate due process, absent a showing of bad faith. As an alternate ground, the court held that sufficient independent evidence existed of the in-court identification's reliability to make any reliance on the photo identifica-

---

**1.** Apparently, at that time the Chicago Police Department had a standard procedure requiring police officers to retain a record of all loose photographs shown to a witness. Appellant's Br. at 16–17 and Appendix "B."

**2.** According to the Appellate Court of Illinois, The police on November 20, 1976, began surveillance of the area where the rape had occurred. Two women police officers acted as streetwalking decoys while other officers cov-

ered them. On November 20, between 1:20 and 4 a.m., the police observed the defendant following a decoy on three separate occasions. Because of persons or cars appearing each time, the defendant abandoned his pursuit. This surveillance continued each day through November 27, 1976.
*People v. Montgomery*, 84 Ill.App.3d 695, 40 Ill. Dec. 183, 185, 405 N.E.2d 1275, 1277 (1980).

tion harmless. The district court next held that the trial court's refusal to grant Mr. Montgomery an evidentiary hearing on the photo identification was both precluded from review on the grounds of waiver and, in any event, not such an "egregious departure[ ] from accepted standards of legal justice" that it would violate procedural due process. *Montgomery v. Greer*, No. 88 C 9250, mem. op. at 10, 1989 WL 54969 (N.D.Ill. May 17, 1989). Finally, the court held that the in-court identification was permissible because the post-arrest line-up was not unduly suggestive and also because sufficient indicia of the in-court identification's reliability existed to ensure that there was no substantial likelihood of irreparable harm. Among the factors that the court looked to to determine the in-court identification's reliability were: (1) that the victim gave a detailed description of her assailant immediately after the attack and expressed confidence in her ability to recognize him; (2) that the victim identified the photograph of Mr. Montgomery two days after the attack; and (3) that the victim did not identify anyone in the initial line-up that did not include Mr. Montgomery. The district court also noted that the victim's description was based on ample opportunity to see the defendant during the commission of the crime and that the victim's testimony indicated that her full attention was on the attacker.

## II

## ANALYSIS

### A. *Guiding Principles*

■ When reviewing a court's decision to grant or deny a petition for writ of habeas corpus, we consider all questions of law de novo. *Matta–Ballesteros v. Henman*, 896 F.2d 255, 258 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 209, 112 L.Ed.2d 169 (1990). Factual issues that have been determined by the state trial or appellate courts are presumptively correct. 28 U.S.C. § 2254(d); *see also Andersen v. Thieret*, 903 F.2d 526, 530 (7th Cir.1990) (citing *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981)); *United States ex rel. Kosik v. Napoli*, 814 F.2d 1151, 1153 (7th Cir.1987). The constitutionality of an identification is a mixed question of law and fact that is not governed by the statutory presumption of section 2254(d). *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982) (per curiam). "In deciding this question, the federal court may give different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard. But the questions of fact that underlie the ultimate conclusion *are* governed by the statutory presumption.... Thus, whether the witnesses ... had an opportunity to observe the crime or were too distracted; whether the witnesses gave a detailed, accurate description; and whether the witnesses were under pressure ... are all questions of fact as to which the statutory presumption applies." *Id.* (emphasis in original); *see also Griswold v. Greer*, 712 F.2d 1200, 1204 (7th Cir.1983).

### B. *Arguments on Appeal*

#### 1. The photo identification

■ Mr. Montgomery first challenges the victim's photo identification. He claims that, because the Chicago police failed to preserve the photographs that they showed the victim, her photo identification of him was per se suggestive.[3] Consequently, he contends, the state trial judge should not have relied upon it in determining that the in-court identification was independent of the suppressed post-arrest line-up.

We believe that the district court was on solid ground in relying upon *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988), to evaluate this

---

**3.** In support of this argument, he cites two cases from the Fifth Circuit and one from Pennsylvania that presumed that photographic identifications were suggestive when the police failed to preserve the photographs that were displayed. *See Branch v. Estelle*, 631 F.2d 1229, 1234–35 (5th Cir.1980); *United States v. Sonderup*, 639 F.2d 294, 299 (5th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 426 (1981); *Commonwealth v. Jackson*, 227 Pa.Super. 1, 323 A.2d 799, 804 (1974).

claim.[4] While the loss of the photographs was both "unprofessional" and "slip-shod," Montgomery made no showing that the police acted in bad faith in losing them. At most, he has demonstrated that the officer was negligent, and mere negligence, without more, does not amount to a constitutional violation. *See Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337; *Mitchell v. Goldsmith*, 878 F.2d 319, 322–23 (9th Cir.1989). We also note that, even in the absence of *Youngblood*, we would be disinclined to apply a per se rule to suppress *any* use of this particular photo array. *See Sales v. Harris*, 675 F.2d 532, 538 n. 3 (2d Cir.), *cert. denied*, 459 U.S. 876, 103 S.Ct. 170, 74 L.Ed.2d 140 (1982) (declining to use a conclusive presumption of suggestiveness from the failure of the police to preserve the photo array). Our examination of the record reveals that, although the other photos were not preserved, there was significant testimonial evidence of the procedure followed by the police.[5] The victim viewed a good number of loose photos (in addition to the many mug books) and did so out of the presence of the police. There was, therefore, at least a minimal protection against suggestiveness on the part of the authorities. Moreover, this photo identification took place just two days after the crime and was therefore within an acceptable interval of time between crime and confrontation. *See Neil v. Biggers*, 409 U.S. 188, 201, 93 S.Ct. 375, 383, 34 L.Ed.2d 401 (1972). We also note that the victim testified that she was not entirely convinced of her identification. Her conduct on this occasion and when she declined to identify anyone in the first line-up, shows that she undertook to identify her attacker with care, not vindictiveness. Moreover, in a bench trial such as this one, we believe

the trial judge, in assessing all these factors, was capable of according appropriate weight to this photo identification. Most importantly, as we shall discuss in the next section, while the photo identification was a factor in the trial judge's conclusion that the in-court identification was not based on the suppressed post-arrest line-up, the record establishes that the victim's identification at trial was anchored solidly in her recollection of the crime itself.

2. In-court identification

■■■ An in-court identification will be considered reliable, and therefore admissible, if, despite impermissible suggestion (the suppressed line-up here), there is no "very substantial likelihood of irreparable misidentification." *Biggers*, 409 U.S. at 198, 93 S.Ct. at 381; *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Rodriguez v. Young*, 906 F.2d 1153, 1162 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 698, 112 L.Ed.2d 688 (1991). The determination of reliability is to be made after examining "the totality of the circumstances." *Biggers*, 409 U.S. at 199, 93 S.Ct. at 382. The Supreme Court has identified a number of factors that are relevant to evaluating an identification's reliability. These are "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the time of confrontation, and (5) the length of time between the crime and the confrontation." *Kubat v. Thieret*, 867 F.2d 351, 358 (7th Cir.), *cert. denied*, 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989) (citing *Biggers*,

---

4. We note that two other circuits have indicated their agreement with this analysis. *See Kordenbrock v. Scroggy*, 919 F.2d 1091, 1103 (6th Cir. 1990) (en banc), *cert. denied*, — U.S. —, 111 S.Ct. 1608, 113 L.Ed.2d 669 (1991) (misplacement or destruction of photographic display governed by *Youngblood* but, in the alternative, harmless error); *Mitchell v. Goldsmith*, 878 F.2d 319, 322–23 (9th Cir.1989) (loss of two photographic line-ups governed by *Youngblood* but, in any event, harmless error).

5. As the district court noted, "under Illinois law, photographs need not be produced in order to prove or disprove suggestiveness." *Montgomery*, No. 88 C 9250, mem. op. at 8 n. 4, 1989 WL 54969 (citing *People v. Thompson*, 93 Ill.App.3d 995, 49 Ill.Dec. 468, 477, 418 N.E.2d 112, 121 (1981), *cert. denied*, 458 U.S. 1109, 102 S.Ct. 3490, 73 L.Ed.2d 1371 (1982); *People v. Dallas*, 85 Ill.App.3d 153, 40 Ill.Dec. 110, 124, 405 N.E.2d 1202, 1216 (1980), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1708, 68 L.Ed.2d 202 (1981)).

409 U.S. at 199–200, 93 S.Ct. at 382–383); *see also Manson v. Brathwaite*, 432 U.S. 98, 114–17, 97 S.Ct. 2243, 2253–54, 53 L.Ed.2d 140 (1977); *United States v. Goodman*, 797 F.2d 468, 470–71 (7th Cir.1986).

The state and the district courts concluded that the victim's in-court identification of Montgomery was reliable and sufficiently independent of the suppressed post-trial line-up to make it admissible at trial. We agree. The victim had an ample opportunity to view her assailant during the commission of the crime. As the trial court and the state appellate court found, although the area where the attack took place was not very well-lighted, the victim saw her attacker three times during the commission of the crime. Also, the record reveals that throughout the encounter, she was highly attentive to what was going on around her. As the state court noted, the victim refused to characterize herself as upset or despondent before the assault, and there is no indication that anything distracted her attention while the attack was occurring. It is true that the description that the victim gave of her attacker was not very detailed as to his height and weight. However, she did state that he was "very large" and "huge," and that he was a clean-shaven black man with a short afro haircut. Moreover, the state trial judge, after observing her on the stand, discounted these minor discrepancies and deficiencies in the description as "human nature." Tr. at 157. There is no dispute that Mr. Montgomery substantially met that description at the time of his arrest. The victim was also highly certain of her identification. At the time of her interview at the hospital she stated that she was sure that she could identify her attacker again. Significantly, the victim also did not identify anyone as her assailant when she viewed the first police line-up.

### Conclusion

On the basis of the record before us, which we have examined thoroughly, we are convinced that the district court correctly determined that the state court proceedings conformed to the mandates of the federal Constitution. Accordingly, we affirm the judgment of the district court.

AFFIRMED.