**UNITED STATES of America ex rel. Michael SANDERS, Petitioner,**

v.

**George E. DETELLA, Warden, Danville Correctional Center, Respondent.**

No. 92 C 4250.

United States District Court, N.D. Illinois, E.D.

Jan. 4, 1993.

11. We will not enter a default judgment against defendants at this time.

Michael Sanders, pro se.

Michael A. Hurst, Terence Madsen, Illinois Atty. General's Office, Chicago, IL, for respondent.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Presently before the court is Michael Sanders' *pro se* petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. In support of his petition, Sanders contends that: (1) the evidence adduced at trial was insufficient to support his convictions; (2) he was denied his right to a preliminary hearing; (3) the pretrial identification was suggestive; and (4) he was denied effective assistance of trial counsel. Respondent George E. Detella, Warden of the Danville Correctional Center in Danville, Illinois, has moved to dismiss Sanders' petition, contending that he was not properly named as a party respondent. For the reasons set forth below, we deny both respondent's motion to dismiss and the petition for writ of habeas corpus.

### I. Background

Following a bench trial in the Circuit Court of Cook County, Sanders was convicted of murder, Ill.Rev.Stat.1991, ch. 38, ¶ 9-1(a), attempted murder, Ill.Rev.Stat.1991, ch. 38, ¶ 8-4(a), and aggravated battery, Ill.Rev. Stat.1991, ch. 38, ¶ 12-4(a). The following facts supporting these convictions are taken directly from the state trial record, and are presumed accurate. 28 U.S.C. § 2254(d)

(1988); *see also Montgomery v. Greer*, 956 F.2d 677, 680 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992).

The charges against Sanders stemmed from a shooting incident occurring in the early morning hours of October 28, 1984, resulting in injuries to four people. Sanders was identified as the shooter by two barmaids (Irene Cady and Brenda West), both of whom were working a Halloween party at Rodney's Hideaway in Chicago. Cady testified that prior to the shooting, Rodney Wilson (the owner of the bar) and Sanders' codefendant (Rudy Powell) had an argument in Sanders' presence. Sanders and Powell spoke briefly in the back of the bar, and both men were escorted outside by an employee of Rodney's Hideaway. Subsequently, Powell reentered the bar to speak with his girlfriend. Cady's next recollection was that of the shooting. Sanders had broken the bar's front window and began shooting inside. With the aid of a bar light, Cady was able to identify Sanders as the shooter prior to ducking for cover beneath the bar. Cady testified that, following the shooting, she was taken to the police station, where she identified Sanders. At the time of her identification, Sanders was not presented in a traditional line-up for identification. Rather, he was in the process of being detained. Later, Cady viewed Sanders through a window while he was sitting alone. Once again she identified Sanders as the shooter.

West, the other barmaid who witnessed the occurrence, was off duty at the time of the shooting. As did Cady, West witnessed the disturbance between Powell and Wilson. As West was getting ready to exit the bar, Powell told her to "get out of there" because he thought there might be trouble. West left Rodney's Hideaway and sat in her car parked directly in front of the bar. She observed Powell and Sanders leave the bar and have a conversation. While Powell reentered the bar, Sanders "ran across in front of the car and went across the street towards his house." Sanders returned several minutes later carrying a black plastic bag in front of him. Sanders then began firing in the direction of the bar with a gun concealed by the bag. West testified that, after the initial shots, Sanders broke the front window and began firing into the bar. Afterwards, Sanders fled back across the street towards his house. West, like Cady, went to the police station shortly after the shooting. After viewing Sanders through a glass window while he lay sleeping alone in a room, West identified Sanders as the shooter.

On October 29, 1984, Sanders appeared in court and was advised that he had been charged with four counts of aggravated battery. The court appointed Sanders counsel, set bond and granted a continuance until November 9, 1984. On November 7, 1984, prior to the conduct of a preliminary hearing, a Cook County grand jury indicted Sanders on charges of armed violence, attempted murder, aggravated battery and intimidation. On November 10, 1984, John Pruitt, one of the victims, died of his wounds and, Sanders was indicted on additional charges of murder.

The court found Sanders guilty of the murder of John Pruitt and the attempted murder and aggravated battery of Marcella Haymer. Sanders was sentenced to concurrent terms of thirty-eight, eighteen, and five years respectively. Sanders appealed directly to the Illinois Appellate Court, challenging only his conviction for aggravated battery on the basis that it was a lesser included offense of attempted murder. In an unpublished order, the appellate court vacated Sanders' aggravated battery conviction, but affirmed his convictions for murder and attempted murder. *People v. Sanders*, 165 Ill.App.3d 1158, 129 Ill.Dec. 968, 536 N.E.2d 1018 (1st Dist. 1987). Sanders' petition for leave to appeal his convictions and sentences to the Illinois Supreme Court was denied on November 9, 1987. In that petition, Sanders argued for the first time that: (1) he was denied his right to preliminary hearing; (2) the pretrial identification was suggestive; and (3) the evidence was insufficient to sustain his convictions.

On April 4, 1988, Sanders filed a petition for post-conviction relief, asserting that: (1) he was denied his right to a preliminary hearing; (2) the pretrial identification was suggestive; (3) he was denied his right to representation at the grand jury hearing re-

sulting in the indictments; and (4) he was not informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Notably absent from his petition is his claim that the evidence was insufficient to sustain the convictions. The petition was argued on September 4, 1991, and, upon the State's motion, dismissed. Sanders appealed the dismissal and, on February 13, 1992, the appellate court affirmed. Subsequently, Sanders filed a petition for leave to appeal to the Illinois Supreme Court, once again maintaining that: (1) he was denied his right to a preliminary hearing; and (2) the pretrial identification was suggestive. Sanders did not challenge his lack of representation at the grand jury hearings nor did he allege that he was not informed of his *Miranda* rights. Sanders, however, raised the following new grounds for relief: (1) that there was insufficient probable cause to support the indictments; (2) that he was denied effective assistance of counsel at trial; and (3) that he was denied the right to counsel in his post-conviction appeal. The Illinois Supreme Court denied Sanders' petition and, on June 29, 1992, he filed the present petition for writ of habeas corpus.

## II. Motion to Dismiss

 The gravamen of respondent's motion to dismiss is that Sanders named the "People of the State of Illinois" rather than George E. Detella, Warden of the Danville Correctional Center in Danville, Illinois, as the party respondent. It is undeniable that the proper party respondent to a petition for habeas relief is the custodian of the petitioner. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (1992) ("If the applicant is presently in custody pursuant to the state judgment in question, the application shall be in the form of a petition for writ of habeas corpus in which the state officer having custody of the applicant shall be named as respondent."); *see also Reimnitz v. State's Attorney of Cook County*, 761 F.2d 405, 408 (7th Cir.1985). Further, Sanders did not name Warden Detella as respondent in his petition for writ of habeas corpus. Nonetheless, Sanders is proceeding in this court *pro se* and, as such, his pleadings are held to a less stringent standard than those drafted by

lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520,. 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Maclin v. Paulson*, 627 F.2d 83, 86 (7th Cir.1980).

Sanders' pleadings make clear that he knew Detella was the proper party respondent. In his memorandum in support of the petition, Sanders not only named the Attorney General as a respondent, but he also named "Danville Warden George Detella," *i.e.*, the proper party respondent. Further in Sanders' reply in support of his petition for habeas relief (incorrectly entitled an "answer"), Sanders begins: "Respondent George E. Detella, being represented by the attorney generals [sic] office of Illinois, is detaining petitioner illegally." Accordingly, under the liberal pleading requirements afforded *pro se* petitioners, we construe Sanders' petition to properly name Detella and, as such, we deny the motion to dismiss.

## III. Procedural Default

 At the threshold, respondent maintains Sanders is barred under the procedural default doctrine from asserting each of his current claims in this forum as he did not present them to the Illinois Appellate Court on direct review. The procedural default doctrine was established by the federal courts to address the following issue: "In what instances will an adequate and independent state [procedural] ground bar consideration of otherwise cognizable federal issues on federal habeas review?" *Wainwright v. Sykes*, 433 U.S. 72, 78–79, 97 S.Ct. 2497, 2502, 53 L.Ed.2d 594 (1977). State courts typically invoke procedural bars at various stages throughout the totality of the state proceedings. For instance, and directly relevant to Sanders' current petition, Illinois treats any claims omitted on direct appeal as waived for purposes of state post-conviction proceedings, provided the issues were known or should have been known at the time the direct appeal was filed. *Reese v. Peters*, 926 F.2d 668, 671 (7th Cir.1991) (citing *People v. Gaines*, 105 Ill.2d 79, 87–88, 85 Ill.Dec. 269, 473 N.E.2d 868 (1984)). As such, a petitioner who has failed to raise such claim during direct review in the Illinois courts forfeits the right to assert the claim in a federal habeas

proceeding. *Farrell v. Lane*, 939 F.2d 409, 411 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991); *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir.1990); *Zellers v. Duckworth*, 763 F.2d 250, 252 (7th Cir.), *cert. denied*, 474 U.S. 952, 106 S.Ct. 319, 88 L.Ed.2d 302 (1985); *Williams v. Duckworth*, 724 F.2d 1439, 1442 (7th Cir.), *cert. denied*, 469 U.S. 841, 105 S.Ct. 143, 83 L.Ed.2d 82 (1984). Likewise, if the prisoner neglects to raise a claim in a state petition for post-conviction relief, such claim being known or should have been known at the time of the petition, Illinois courts of appeals will typically invoke a procedural bar rather than address the claim on the merits. Consequently, those claims will not be reviewed under the guise of federal habeas corpus. *Farrell*, 939 F.2d at 409.

■ There is no dispute that Sanders failed to present each of his four current claims to the Illinois Appellate Court on direct appeal. Based solely on the timing of assertion in the state courts, we conclude that Sanders is precluded from asserting two of his present claims in this proceeding. First, his claim regarding the sufficiency of the evidence was not raised on direct appeal until his petition for leave to appeal to the Illinois Supreme Court, and was subsequently abandoned in his initial petition for post-conviction relief. Sanders' second claim, that he was denied ineffective assistance of trial counsel, was not raised until his post-conviction petition for leave to appeal to the Illinois Supreme Court. Clearly, Sanders either knew or should have known of his claim regarding the sufficiency of the evidence at the time he filed his direct appeal to the Illinois Appellate Court. Likewise, Sanders' claim of ineffective assistance of trial counsel (whether based on facts outside of the trial record or not) came too late. Giving Sanders the benefit of the doubt, to the extent that his Sixth Amendment claim involves matters outside of the trial record, the issue could have been, and should have been, presented no later than in his petition for post-conviction relief to the Illinois trial court. *See Reese*, 926 F.2d at 671 ("Illinois allows prisoners to contend on collateral attack that they did not receive effective assistance of counsel, even if no such claim was presented on direct appeal, when the claim depends on facts outside the trial record."); *see also Perry v. Fairman*, 702 F.2d 119, 122 (7th Cir.1983) (collecting cases). In the absence of a showing of "cause" for his defaults and actual "prejudice" therefrom, *see Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506; *Farrell*, 939 F.2d at 411; *Gramley*, 915 F.2d at 1132; *United States ex rel. Spurlark v. Wolff*, 699 F.2d 354, 356 (7th Cir.1983) (en banc), Sanders may not assert the following claims in this forum: (1) that the evidence adduced at trial is insufficient to support his convictions; and (2) that he received ineffective assistance of counsel at trial.

■ Sanders' two remaining claims are brought to this court in a different posture. While not raised on direct appeal to the Illinois Appellate Court, Sanders' petition for post-conviction relief included arguments regarding his right to a preliminary hearing and the suggestiveness of the pretrial identification. As such, this court need not speculate as to whether the Illinois courts would invoke a procedural bar when confronting these claim on collateral attack. Indeed, the Illinois Appellate Court—the last Illinois court to render a judgment in the case, *see Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir.1990)—did not beseech such a bar. Instead the appellate court stated in its entirety:

Defendant appeals from the dismissal of his *pro se* post-conviction petition which sought to set aside his conviction for murder and attempted murder for which he was sentenced to concurrent terms of 35 years and 18 years. This court previously affirmed these convictions and sentences on direct appeal in an unpublished order. (*People v. Sanders* (1987), 165 Ill.App.3d 1158 [129 Ill.Dec. 968, 536 N.E.2d 1018].) The public defender of Cook County, who represents defendant on appeal, has filed a motion for leave to withdraw as appellate counsel. A brief in support of the motion has been submitted pursuant to *Pennsylvania v. Finley* (1987), 481 U.S. 551, 95 L.Ed.2d 539, 107 S.Ct. 1990, in which counsel states that he has reviewed the trial

record and concluded that there are no arguable bases for collateral relief.

We have carefully reviewed the record in this case and the aforesaid brief in compliance with the mandate of *Pennsylvania v. Finley* and find no issues of arguable merit. Therefore, the motion of the public defender for leave to withdraw as counsel is allowed and the judgment of the circuit court is affirmed.

*People v. Sanders,* No. 91–3243 (Ill.App. 1st Dist. Feb. 13, 1992). Without explicitly invoking a procedural bar, we cannot assume that the Illinois Appellate Court actually relied on a state rule sufficient to justify its decision. *See Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989); *Prihoda,* 910 F.2d at 1382–83. Accordingly, this court will review the merits of Sanders' claims regarding his right to a preliminary hearing and the suggestiveness of the pretrial identification.

## IV. The Right to a Preliminary Hearing

▆ Sanders contends that as a matter of due process he should have been afforded a preliminary hearing to determine probable cause prior to being arrested. We disagree. Under Illinois law, prosecutions can be pursued by either information or indictment and, consistent with both the Illinois and United States Constitutions, only those pursued by information require a preliminary hearing. Ill.Rev.Stat. ch. 38, ¶ 111–2(a) (1991). When a grand jury promptly returns an indictment, due process does not require a preliminary hearing, as the essential function of such a hearing—the determination of probable cause—is performed by the grand jury. *People v. Kline,* 92 Ill.2d 490, 501–02, 65 Ill.Dec. 843, 848, 442 N.E.2d 154, 159 (1982); *People v. Torres,* 93 Ill.App.3d 718, 720, 49 Ill.Dec. 38, 40, 417 N.E.2d 728, 730 (2d Dist. 1981). The fact that a defendant was initially charged by information is irrelevant; the essential inquiry is whether the defendant received a prompt determination of probable cause. *See People v. Smith,* 115 Ill.App.3d 453, 454–55, 71 Ill.Dec. 363, 364, 450 N.E.2d 1242, 1243 (1st Dist.1983) (indictment that came four weeks after arrest considered prompt); *see also People v. Franklin,* 80 Ill.App.3d 128, 131, 35 Ill.Dec. 121, 123, 398 N.E.2d 1071, 1073 (1st Dist.1979) ("If a defendant is initially charged by criminal complaint, but is indicted for the same crime prior to a prompt preliminary hearing on the complaint, he is not constitutionally entitled to a preliminary hearing.").

Sanders was arrested on October 28, 1984. As he was initially charged by information, a preliminary hearing was set for November 9, 1984. On November 7, 1984, two days prior to the scheduled preliminary hearing, Sanders was indicted on charges of armed violence, attempted murder, aggravated battery and intimidation. The subsequent murder indictment was returned on November 27, 1984, less than one month after Sanders' arrest. Based on this chronology of events, it is clear that he received a prompt determination of probable cause. Accordingly, that Sanders did not receive a preliminary hearing is insufficient in itself to warrant habeas relief.

## V. The Pretrial Identification

▆ As a final ground in support of habeas relief, Sanders maintains that the in-court identification of him by West and Cady violated his right to procedural due process as they were tainted by the unconstitutionally suggestive procedures used at the police station. When faced with a claim of an improper identification procedure, the court engages in a well-established, two-pronged inquiry. First, petitioner must establish that the procedure in question was "unduly suggestive." *Kubat v. Thieret,* 867 F.2d 351, 357 (7th Cir.), *cert. denied,* 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989); *United States ex. rel. Kosik v. Napoli,* 814 F.2d 1151, 1155 (7th Cir.1987). Under the second prong, an unduly suggestive procedure will still be admissible if it is not so unreliable under the totality of the circumstances that it creates "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *see also Manson v. Brathwaite,* 432 U.S. 98, 109–14, 97 S.Ct. 2243, 2250–53, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 198–99, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Montgomery v. Greer,* 956 F.2d 677, 681 (7th

Cir.), *cert. denied,* ——— U.S. ———, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992). The totality of the circumstances included consideration of the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the level of certainty demonstrated by the witness at the confrontation; (4) the length of time between the crime and the confrontation; and (5) any acquaintance with the criminal prior to the crime. *Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382–83; *United States v. Donaldson,* 978 F.2d 381, 385 (7th Cir.1992); *Montgomery,* 956 F.2d at 681; *Kubat,* 867 F.2d at 358.

At the time that West and Cady identified Sanders at the police station, they each viewed Sanders through a glass window as he sat in a room by himself. Indeed, one-man "show-ups" are less than optimal and, as such, are often condemned as suggestive. *Johnson v. Dugger,* 817 F.2d 726, 729 (11th Cir.1987) (citing *Frank v. Blackburn,* 605 F.2d 910, 912 (5th Cir.1979), *aff'd in pertinent part,* 646 F.2d 902 (1981) (en banc), *cert. denied,* 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981)). Nonetheless, at times, "show-ups" are valuable tools in that they enable identification before the suspect has altered his appearance and while the witness' memory is fresh. *Id.* Further, they permit quick release of innocent persons. *Id.* As such, "show-ups are not unduly suggestive unless the police aggravate the suggestiveness of the confrontation." *Id.* As in *Johnson,* the police here did not aggravate the suggestiveness and, hence, the confrontation was not unduly suggestive.

Moreover, Sanders has failed to establish that the procedure under the totality of the circumstances created "a substantial likelihood of irreparable misidentification." Both witnesses had ample opportunity to attentively view Sanders at the time of the crime. West was in a car parked directly in front of the bar. Cady, who was in the bar at the time of the shooting, testified that she clearly saw Sanders' face through the broken window before she ducked for cover. Further, both Cady and West were previously acquainted with Sanders for at least six months prior to the crime. Finally, very little time

had passed between the time of the shooting and the positive identifications at the police station. Finding the pretrial identification of Sanders by West and Cady reliable, we conclude that Sanders was not denied due process by the subsequent in-court identification.

### VI. Conclusion

For the reason set forth above, we deny both respondent's motion to dismiss and Sanders' petition for writ of habeas corpus. It is so ordered.