28 F.3d 1216
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Harold McFARLAND, Petitioner-Appellant,
v.
Robert A. FARLEY, et al., Respondents-Appellees.
 No. 93-2352.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 30, 1994.*
Decided July 18, 1994.
 
 Before CUDAHY, COFFEY and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Harold McFarland, proceeding pro se, appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. We affirm.
 
 
 2
 McFarland was convicted by an Indiana state jury of second-degree murder and felony murder for the killing of Frank Judge, a retired police officer and court bailiff in Gary, Indiana, during a robbery of the Judge's Court Bar on August 24, 1976. McFarland was sentenced to life imprisonment for the felony murder conviction. The Supreme Court of Indiana affirmed his convictions and sentence on direct appeal. McFarland v. State, 381 N.E.2d 1061, 1064 (Ind.1978). McFarland next petitioned for post-conviction relief. The Indiana state trial court denied relief, and the Supreme Court of Indiana affirmed. McFarland v. State, 579 N.E.2d 610, 613 (Ind.1991). McFarland then filed this habeas action in the Northern District of Indiana. McFarland raises several claims which we will address in turn.
 
 I. Jury Instructions
 
 3
 McFarland asserts that the jury instruction regarding his felony murder charge was inadequate because it did not inform the jury that the prosecution was required to prove that McFarland intended to commit robbery. The jury instruction with respect to the felony murder charge provided in relevant part that "[w]hoever kills a human being while perpetrating or attempting to perpetrate robbery is guilty of MURDER IN THE FIRST DEGREE and, on conviction, shall be imprisoned in the State Prison during life." This instruction accurately reflected Indiana law, which defined felony murder at the time of the crimes as follows:
 
 
 4
 Whoever kills a human being ... while perpetrating or attempting to perpetrate rape, arson, robbery, or burglary is guilty of murder in the first degree and, on conviction, shall be imprisoned in the state prison during life....
 
 
 5
 Ind.Code Sec. 35-13-4-1(a) (1976). The instruction also stated that "[w]hoever takes from the person of another any article of value by violence or by putting in fear, is guilty of ROBBERY." This instruction accurately stated the definition of robbery under Indiana law at the time of the crimes. Ind.Code Sec. 35-13-4-6 (1976).
 
 
 6
 We may not overturn a conviction resulting from a state trial merely because a jury instruction was "undesirable, erroneous, or even 'universally condemned.' " Cupp v. Naughten, 414 U.S. 141, 146 (1973). Rather, our inquiry is whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 147. The jury instruction in this case clearly does not meet this standard. The evidence at trial established that a robbery was committed at the Judge's Court Bar, and that Judge was killed during the course of that robbery. We agree with the Supreme Court of Indiana that there is no evidence in the record "from which a jury could have found that the perpetrators did not intend to commit a robbery." McFarland, 579 N.E.2d at 612.
 
 
 7
 McFarland also asserts that the jury instruction concerning his second-degree murder charge was inconsistent with the felony murder jury instruction, and that this inconsistency confused the jury and rendered the verdict unreliable. McFarland was charged by indictment with both first-degree murder and felony murder. Second-degree murder is a lesser-included offense in an indictment charging first-degree murder. Gatchett v. State, 300 N.E.2d 665, 667 (Ind.1973). The jury instruction for the second-degree murder charge stated that "[w]hoever purposely and maliciously but without premeditation kills any human being is guilty of MURDER IN THE SECOND DEGREE ..." This instruction accurately stated the legal definition of second-degree murder at the time of the crimes. Ind.Code Sec. 35-1-54-1 (1976). Unlike first-degree murder, there are no lesser-included homicide offenses for felony murder under Indiana law. E.g., Hopkins v. State, 582 N.E.2d 345, 352 (Ind.1991); Smith v. State, 508 N.E.2d 14, 16 (Ind.1987); Fleener v. State, 412 N.E.2d 778, 782 (Ind.1980) (collecting cases). Felony murder also does not require an intent to kill under Indiana law. Schiro v. Farley, 114 S.Ct. 783, 791 (1994). Second-degree murder and felony murder are two completely separate crimes in Indiana. Therefore, the jury instructions for these crimes were not inconsistent and could not have confused the jury. Cf. Schad v. Arizona, 111 S.Ct. 2491, 2496-2504 (1991) (plurality opinion); id. at 2506-07 (Scalia, J., concurring) (instructing a jury that it could find the defendant guilty of first-degree murder if it found either that the defendant killed his victim as a result of premeditation or while committing robbery, while not requiring that the jury agree unanimously on either theory, does not violate due process of law).
 
 II. Substitution of Verdict Forms
 
 8
 McFarland also contends that an improper verdict form confused the jury and produced an unreliable verdict. The trial court initially supplied the jury with an incorrect verdict form which the jury used to find McFarland guilty of "inflicting injury in the perpetration of a robbery or attempted robbery." The trial court voided the verdict and furnished the jury with a correct verdict form. The jury then retired for further deliberations and subsequently found McFarland guilty of "murder in the perpetration of a robbery."
 
 
 9
 The substitution of verdict forms did not deprive McFarland of any constitutional right. An Indiana state trial court has the duty to correct an erroneous jury verdict, provide the jury with a correct verdict form, and order the jury to retire for further deliberations. E.g., Langley v. State, 267 N.E.2d 538, 543 (Ind.1971); Limeberry v. State, 63 N.E.2d 697, 699 (Ind.1945). "After a jury has been directed to return to the jury-room and amend or correct the verdict, it has the power and right to change the whole verdict, and bring in an entirely different verdict." Limeberry, 63 N.E.2d at 699 (citation omitted). This practice is consistent with that of federal courts. A federal district court "has authority to require redeliberation in cases in which there is uncertainty, contingency, or ambiguity regarding the jury's verdict." United States v. Hiland, 909 F.2d 1114, 1137 (8th Cir.1990) (quoting United States v. Rastelli, 870 F.2d 822, 835 (2d Cir.), cert. denied, 493 U.S. 982 (1989)); accord United States v. Mears, 614 F.2d 1175, 1179 (8th Cir.) ("A jury may remedy an announced verdict which is incorrectly signed due to inadvertent error."), cert. denied, 446 U.S. 945 (1980); cf. Fed.R.Crim.P. 31(d) (authorizing a district court to direct a jury to retire for further deliberation if a poll shows a lack of unanimity). There is no evidence in the record that the trial court, after providing the jury with a correct verdict form, indicated the manner in which it felt the jury should decide. The substitution of the verdict forms also did not violate McFarland's rights under the Double Jeopardy Clause of the Constitution. "If not accepted by the trial court, a verdict is not final for purposes of double jeopardy." Hiland, 909 F.2d at 1138.
 
 III. Ineffective Assistance of Counsel
 
 10
 McFarland asserts that he received constitutionally ineffective assistance of counsel at trial and on direct appeal of his conviction. McFarland's counsel was constitutionally ineffective only if (1) counsel's performance was deficient, and (2) this deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Prejudice to the defendant is established only upon a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The result of the proceeding must also be fundamentally unfair or unreliable. Lockhart v. Fretwell, 113 S.Ct. 838, 842 (1993).
 
 
 11
 McFarland contends that his trial counsel was constitutionally ineffective by (1) failing to submit a jury instruction concerning intent to commit robbery; (2) failing to object to the trial court's instructions; (3) failing to object to the improper verdict form; (4) failing to adequately prepare for trial and file "necessary" pre-trial motions; (5) failing to present available evidence; and (6) failing to adequately cross-examine prosecution witnesses Gladys Glenn and Robert Hamilton. Appellant's Br. at 10-12. The record contains no evidence that the perpetrators did not intend to commit a robbery, and therefore the failure to tender a jury instruction concerning this issue did not prejudice McFarland. Strickland, 466 U.S. at 687. The instructions tendered to the jury were accurate statements of Indiana law at the time of the crimes, and the substitution of verdict forms did not deprive McFarland of any constitutional right. The performance of McFarland's counsel was not deficient for failure to raise these objections at trial. Id. at 689. The record contains no evidence of any inadequate preparation by trial counsel. McFarland's counsel filed several pre-trial motions, including motions to suppress Glenn's in-court identification and written confession, and conducted vigorous cross-examinations of both Glenn and Hamilton. Counsel's performance was not constitutionally deficient in these areas. McFarland's assertion that a witness named Randolph Roby would have testified favorably to McFarland at trial does not establish prejudice under Strickland, id. at 687, nor does it establish that McFarland's conviction was fundamentally unfair or unreliable, Lockhart, 113 S.Ct. at 842.
 
 
 12
 McFarland also contends that his counsel on direct appeal of his conviction[1] was constitutionally ineffective by failing to raise "all the issues" necessary to litigate the appeal and by submitting an inadequate appellate brief which contained "unsubstantiated personal opinions" and other statements outside the record. Appellant's Br. at 15. A criminal defendant has no constitutional right to have appellate counsel raise every nonfrivolous issue that the defendant requests. Jones v. Barnes, 463 U.S. 745, 754 (1983); United States v. Lawson, 947 F.2d 849, 853 (7th Cir.1991), cert. denied, 112 S.Ct. 1505 (1992). McFarland's counsel raised two issues on direct appeal: (1) whether admission of the written confession violated McFarland's constitutional rights, and (2) whether McFarland was denied his constitutional right to the effective assistance of counsel. McFarland, 381 N.E.2d at 1062. McFarland has failed to demonstrate that his counsel's decision to forego other arguments was not a product of reasonable professional judgment or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. We have also examined McFarland's appellate brief to the Supreme Court of Indiana and find it well within "the wide range of reasonable professional assistance." Id. at 689.
 
 
 13
 IV. Denial of Continuance by the Indiana Trial Court
 
 
 14
 McFarland contends that the trial court erroneously denied his request for a continuance in order to obtain the testimony of Leon Woods, his asserted alibi witness. During the trial, McFarland's attorney informed the court that Woods was having difficulty finding transportation and that Woods was not present when a defense investigator arrived at his home to drive him to the courthouse. The investigator had spoken with Woods over the phone that morning. The prosecution refused to stipulate to Woods' proposed testimony, and the trial court issued a bench warrant for Woods. Woods was not arrested and did not appear in court. Later that day, when Woods still could not be found, the court granted McFarland's request for a continuance for one day. The next day, Woods was still unavailable, and the defense investigator testified before the jury concerning his efforts to locate Woods. No further continuances were granted.
 
 
 15
 A denial of a continuance violates due process only when the trial court has abused its discretion and the denial results in a fundamentally unfair trial. United States ex rel. Searcy v. Greer, 768 F.2d 906, 913 (7th Cir.), cert. denied, 474 U.S. 996 (1985); see also Manlove v. Tansy, 981 F.2d 473, 476 (10th Cir.1992). Factors relevant to this inquiry are: (1) whether due diligence has been exercised to obtain the attendance of the witness; (2) whether substantial favorable evidence would be tendered by the witness; (3) whether the witness is available and willing to testify; and (4) whether the denial of the continuance would materially prejudice the defendant. United States ex rel. Searcy v. Greer, 768 F.2d at 913.
 
 
 16
 The trial court's refusal to grant an additional continuance was not an abuse of discretion and did not result in a fundamentally unfair trial. The trial court had already granted one continuance and had issued a bench warrant for Woods. Although McFarland was diligent in attempting to obtain Woods' presence, Woods was unavailable and apparently unwilling to testify. Further, the record does not indicate that Woods would have tendered substantial evidence favorable to McFarland, nor does it indicate that McFarland was materially prejudiced by Woods' failure to testify. The alibi was already in evidence through McFarland's own trial testimony. Woods testified at the post-conviction hearing only that he saw McFarland at his home about 5:00 or 6:00 p.m. and again before 9:00 or 10:00 p.m. on August 24, 1976. The robbery and murder occurred after 11:00 p.m. that evening.[2]
 
 V. Admission of Written Confession
 
 17
 McFarland asserts that a written statement in which McFarland implicated himself in the robbery and murder was unconstitutionally admitted against him at trial because he had not validly waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Both the trial court and the Supreme Court of Indiana determined that McFarland had knowingly waived his Miranda rights. McFarland, 381 N.E.2d at 1063. State-court determinations of the validity of Miranda waivers are subject to a presumption of correctness under 28 U.S.C. Sec. 2254(d). E.g., Baskin v. Clark, 956 F.2d 142, 145 (7th Cir.), cert. denied, 113 S.Ct. 109 (1992); Mikel v. Thieret, 887 F.2d 733, 739 (7th Cir.1989). The state-court determinations are supported by the testimony of two police officers that McFarland made only one statement, which was written, and that the statement was given after McFarland had signed two written waivers of rights. McFarland's self-serving testimony to the contrary is insufficient to rebut the presumption of correctness under 28 U.S.C. Sec. 2254(d).
 
 
 18
 McFarland also asserts that his written confession was involuntary under the totality of the circumstances. This is a question of law subject to de novo review. Miller v. Fenton, 474 U.S. 104, 115 (1985). "The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (citation omitted). Our review of the record reveals that McFarland's confession was voluntary under the totality of the circumstances.
 
 
 19
 VI. Admission of In-Court Identification Testimony
 
 
 20
 McFarland asserts that his in-court identification by Gladys Glenn should have been suppressed because the identification was tainted by an unduly suggestive pretrial procedure. Glenn was a bartender in the Judge's Court Bar on the night of the robbery and witnessed the murder. Glenn was shown numerous photographs by the Gary police department on the night of the robbery and at subsequent sessions and did not identify McFarland. Glenn also participated in a police lineup in Valparaiso, Indiana, in which McFarland was present and did not identify anyone. Nevertheless, at trial Glenn positively identified McFarland based on her observations on the night of the crime.
 
 
 21
 McFarland must satisfy a two-part test in challenging the admissibility of Glenn's identification testimony. United States v. Duprey, 895 F.2d 303, 307 (7th Cir.1989), cert. denied, 495 U.S. 906 (1990); see also Montgomery v. Greer, 956 F.2d 677, 681 (7th Cir.), cert. denied, 113 S.Ct. 460 (1992). First, McFarland must establish that the pretrial identification procedures were impermissibly suggestive. Duprey, 895 F.2d at 307. If McFarland satisfies this burden, we must consider whether the procedures were "so unduly suggestive as to give rise to irreparable mistaken identification-or stated in the affirmative, whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure[s]." Id.; accord Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Neil v. Biggers, 409 U.S. 188, 198-99 (1972); Montgomery, 956 F.2d at 681.
 
 
 22
 McFarland has clearly failed to establish that the pretrial identification procedures were impermissibly suggestive. Glenn was shown numerous photographs by the Gary police on several occasions. There is no evidence in the record that any photograph was pointed out to her by the police or otherwise emphasized in any way. There is no evidence in the record that the police prompted Glenn to identify McFarland at the lineup, nor is there any evidence that McFarland stood out from any of the other men in the lineup. Cf. Foster v. California, 394 U.S. 440, 443 (1969) (Suggestive elements in identification procedures "made it all but inevitable" that the witness would identify the petitioner "whether or not he was in fact 'the man.' In effect, the police repeatedly said to the witness, 'This is the man.' "). Indeed, Glenn testified at the pretrial suppression hearing that she was able to identify McFarland at the lineup but declined to do so because she feared for her life and was frightened from being face-to-face with McFarland at the jail.
 
 
 23
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 McFarland was also represented by counsel in the state post-conviction proceedings. To the extent that McFarland is asserting that he received constitutionally ineffective assistance of counsel in these proceedings, see Appellant's Br. at 14-15, the argument is without merit. A prisoner has no constitutional right to counsel when mounting a collateral attack on a conviction. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). "[T]he right to appointed counsel extends to the first appeal of right, and no further." Id. Because there is no constitutional right to counsel in state post-conviction proceedings, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." Coleman v. Thompson, 111 S.Ct. 2546, 2566 (1991)
 
 
 [2]
 McFarland also contends that his trial counsel was constitutionally ineffective by failing to request a second continuance. This argument fails because McFarland has failed to establish that this failure prejudiced his defense, Strickland, 466 U.S. at 687, or produced a fundamentally unfair or unreliable result, Lockhart, 113 S.Ct. at 842, for the reasons stated above