Forrest NAPIER, Appellant,

v.

STATE of Indiana, Appellee.

No. 580S136.

Supreme Court of Indiana.

March 16, 1983.

Rehearing Denied May 5, 1983.

Cohen & Thiros by Max Cohen and David Capp, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, Forrest Napier, was convicted of Murder, Ind.Code § 35–42–1–1 (Burns Repl.1979), and Arson, Ind. Code § 35–43–1–1 (Burns Repl.1979), at the conclusion of a jury trial in Jasper Circuit Court on November 21, 1979. Napier was sentenced to forty (40) years imprisonment for the murder conviction and thirty (30) years imprisonment for the arson conviction, both sentences to run concurrently. Napier now appeals.

Six issues were raised for consideration, concerning:

1) whether the combination of alleged prosecutorial misconduct and some irregularities in the proceedings constituted the denial of due process;

2) whether the trial court erred in the admission of testimony referring to a polygraph examination;

3) whether the trial court erred in the giving of an "Allen" charge;

4) whether there was adequate evidence to form the foundation of a hypothetical question to an expert witness;

5) whether the defendant's statement before a fire marshal's inquest was admissible at trial; and,

6) whether there was sufficient evidence introduced at trial to convict the defendant of murder and arson.

The evidence most favorable to the State reveals that there was a fire at the home of Forrest Napier on November 6, 1978. The

fire did extensive damage to the home in addition to causing the death of Jean Napier, the defendant's wife. Neighbors testified that loud arguments were heard between Napier and his wife during the night and morning previous to the fire and that smoke was seen coming from the house shortly after the defendant left. Firemen discovered Mrs. Napier unconscious, with wounds from which she later died. Immediate cause of death was pneumonia and lung abcess which the pathologist stated was due to the fire and smoke inhalation. The pathologist also found a contusion at the base of the brain. There was also testimony indicating that the fire was set since traces of kerosene were found in areas of the fire's source.

## I

Defendant argues that there was prosecutorial misconduct to such an extent that he was denied due process. Although he admits that not all of the instances he points out were reversible error, taken together they all indicate a denial of due process. One example was the testimony of Michael Welch. Welch initially testified that two of the victim's lower teeth were dislodged during intubation. Intubation is the process where a laryngoscope is inserted in a person's mouth in order to start the breathing process. Welch was later recalled to the stand to clarify his remarks and to testify about alleged prosecutorial misconduct. Outside the jury's presence, Welch stated that he saw the prosecutor at a party and the prosecutor asked him if $300 would change his testimony. Another individual, Officer Barry Rutherford, told Welch that "a couple years hard labor" might change his testimony. On both of these incidents Welch stated to the trial court that he knew the remarks were made in jest. Finally, Welch stated that Officer Michael Bolinski tried to get him to change his testimony by implying that his memory was faulty. The trial court ruled that the remarks made in jest would be excluded but Welch could testify about the remarks by Bolinski.

Defendant Napier argues that if he made jesting remarks to a State's witness, such remarks would have been admitted into testimony. He cites *Wasy v. State,* (1956) 236 Ind. 215, 138 N.E.2d 1, to show that both the trial court and the prosecutor have a duty to see that justice is done in conformity with recognized legal principles. While this is true, we fail to see how the trial court abused its discretion in disallowing portions of Welch's testimony. The trial court allowed Welch to testify about Bolinski's tactics but would not allow him to testify about remarks that Welch himself thought were facetious. The testimony presented was favorable to the defendant and aided in the fact-finding process. There was no error in the trial court's decision.

Defendant also argues that there were a number of irregularities that taken together raised serious due process questions concerning the fairness of the entire process. The first incident concerns the issuance of a search warrant authorizing officials to reenter the Napier home the day after the fire. Paul Corey, Knox Fire Chief, signed the probable cause affidavit and stated, in part, that the fire was primarily in the bedroom area of the house and a mattress and bedspring had been burned; however, the springs were standing upright, indicating a rapidly accelerated fire. At the suppression hearing and before the jury at trial, Corey claimed this was incorrectly transcribed. He said when the springs are collapsed, a rapidly accelerated fire is indicated. Corey testified that he observed collapsed springs, not standing springs as the probable cause affidavit indicated. A second irregularity concerned the grand jury testimony of Barker Davie, the State's principal arson expert at trial. Davie testified that the windows in the Napier house had imploded, indicating that the glass had been sucked inside by the fire's intensity. This led him to believe that arson was present because of the fire's high intensity. It was later learned, and testified to at the trial, that the windows had not imploded but rather, the firemen had knocked out the

windows in order to fight the fire. The third instance concerned direct examination of Detective Rutherford in which he was allowed to testify, over objection, to an incident that had happened to him in 1966, when he had had teeth knocked out with no external cuts or bruises in the mouth area. Defendant objected on relevance and this objection was overruled. The fourth irregularity was one involving witness John Moorman, who testified about an argument he had had with Rutherford concerning the victim's teeth when Rutherford mentioned his 1966 injury. Defendant does not claim that any of these four incidents are reversible error, but argues they constitute such prosecutorial misconduct that they represent a denial of due process. Defendant further states that when all of these incidents are considered, along with the fact that he was subpoenaed to testify before a fire marshal's inquest, where he incriminated himself, and testimony from the fire marshal's inquest, which contained references to a polygraph test, there is a pattern which is so demonstrative of deprivation of due process that it constitutes reversible error. The question of error concerning the fire marshal's subpoena and the reference to the polygraph test will be discussed in more detail later in this opinion.

■ There is no showing that any of the irregularities enumerated above were purposely calculated to mislead the judge or the jury. Paul Corey testified that his affidavit should have read: "The springs were *not* standing upright indicating a rapidly accelerated fire." (emphasis added) This issue was clearly discussed by several witnesses before the jury and experts agreed that collapsed springs indicated the use of an accelerant. The same is true of Barker Davie's grand jury testimony as to the implosion of the windows. During the trial the jury was informed that the firemen broke the windows. The broken windows were only one of the reasons given by Barker Davie for his opinion that accelerants were used, thereby resulting in a very hot fire. There was other testimony before the grand jury indicating the presence of accelerants. It cannot be said and the defend-

ant does not claim that the grand jury was misled by this one statement. Neither of these incidents contributed to the decision of the jury at the defendant's trial and did not prejudice him in any manner. They therefore did not constitute reversible error. The only objection made to Rutherford's testimony about his accident in 1966 was that it was irrelevant. Admission of evidence which is arguably relevant is a matter of trial court discretion, and reversal would occur only upon a showing that such discretion has been manifestly abused and the complaining party has been denied a fair trial. *Hartman v. State,* (1978) Ind. App., 376 N.E.2d 100, 104. There is no showing here that the trial court abused its discretion in permitting this testimony. As to Moorman's testimony about Rutherford's injury story, the defendant made no objection at trial and did not assign any error in his motion to correct errors. This alleged error is waived. Ind.R.App.P. 8.3(A)(7) Since none of these irregularities standing alone amount to error, they cannot gain the stature of reversible error taken together. We agree with the State that "[t]he fact that there may have been six or seven arguable imperfections in the proceeding does not justify a reversal."

## II

■ As part of the State's case a tape recording of the defendant's testimony at a fire marshal's inquest was played for the jury. In the tape the defendant was asked whether he would submit to a polygraph examination and he responded that he was willing to do so. Before admitting the tape into evidence, the prosecutor and defense counsel met with the judge and listened to the tape, agreeing that certain portions of it were inadmissible and should be kept from the jury. The prosecutor brought the polygraph references to the trial judge's attention at this time but defense counsel waived objection to it and, in fact, welcomed it. Defense counsel at that time thought it would be an advantage to the defendant and wanted it to be heard by the jury. Defendant now claims that he was

prejudiced because the jury would undoubtedly conclude that he failed or refused the examination and that the trial judge should have had the defendant personally waive the objection. In support of his contention that defense counsel's waiver was ineffective, Defendant cites *Pavone v. State,* (1980) Ind., 402 N.E.2d 976; *White v. State,* (1978) 269 Ind. 479, 381 N.E.2d 481; *Owens v. State,* (1978) Ind.App., 373 N.E.2d 913. Each of these cases provides that for the *results* of a completed polygraph examination to be admissible, the prosecutor, defense counsel, and the defendant himself must so stipulate and agree to the admission. These tapes mentioned only that the defendant was willing to take a polygraph. Defendant now concludes that the effect of this evidence would have the jury assume he failed or refused the examination. As the State points out, the jury could just as reasonably conclude that the test did not occur by agreement of the prosecution and defense, or that the defendant passed the examination. Defendant admits that his counsel was more than willing to have the jury hear the tape of the defendant saying that he would submit to a polygraph. This strategy anticipated that the statement would have a favorable effect on the jury. We will not find reversible error on admission of evidence which the trial court was invited by the defense to admit.

### III

 The defendant claims that the trial court committed reversible error when, during deliberations, it gave the jury what has been referred to as an "Allen" charge. The "Allen" charge was taken *in toto* from *Guffey v. State,* (1979) Ind.App., 386 N.E.2d 692, 695, where the instruction was approved. In *Lewis v. State,* (1981) Ind., 424 N.E.2d 107, this Court expressly disapproved of the use of the "Allen" charge where the defendant had made a timely objection. Defendant argues that even though he did not object to the "Allen" charge in this case, this Court should order the retroactive application of *Lewis* and find reversible error. To preserve error in instructions one must lodge a specific objection at trial. *Raspberry v. State,* (1981) Ind., 417 N.E.2d 913. Absent a timely objection and tender of an alternative instruction, the issue is waived on appeal. *Snider v. State,* Ind., 412 N.E.2d 230. Since the defendant did not object at the time the instruction was given by the trial court, he waived any error by the giving of the instruction.

### IV

Defendant argues the trial court erred when it allowed Dr. Vakili, one of the State's expert witnesses, to answer a hypothetical question, which included the recitation of hypothetical facts that the victim's teeth were missing and that the victim had suffered heat burns as opposed to contact burns. Defendant claims the question was improper because there was no evidence indicating either of these facts. The record shows, however, that although these facts were in conflict between different witnesses, there was testimony indicating the presence of both of them. Larry Clymer, the respiratory therapist who treated the victim, testified that at the hospital during the process of intubation, it was discovered that the victim had two teeth out and that the hospital staff did not knock them out during intubation. He also testified that the victim's burns did not appear to be direct, but that her body appeared to have been baked.

 It is a general rule that the trial court has broad discretion to determine qualifications of experts and to admit opinion evidence. Sufficiency of foundations is a matter addressed to the sound discretion of the trial court and will be reversed only for abuse of that discretion. *Hergenrother v. State,* (1981) Ind.App., 425 N.E.2d 225; *Sutton v. State,* (1981) Ind.App., 422 N.E.2d 430. There was no abuse of discretion because the facts which formed the basis of the hypothetical question, as testified to by Larry Clymer, were in evidence.

### V

The defendant claims that the trial court erred when it admitted into evidence a

statement given by him at a State Fire Marshal's inquest. Defendant argues that his right against self-incrimination was violated because his presence was procured by a subpoena and, further, that he had taken prescription medication prior to giving the statement. The State argues that the defendant knowingly waived his right against self-incrimination, that his statement was made voluntarily, and therefore the tape recording of that inquest was properly admitted into evidence.

■ Ind.Code § 22–11–5–12 (Burns Supp.1982) gives the State Fire Marshal and his deputies the power to subpoena the attendance and testimony of witnesses relating to any matter under investigation. The powers granted to the State Fire Marshal are broad and sweeping but as Ind. Code § 22–11–5–21 points out, "... this act is necessary for the public safety, health, peace, and welfare...." There was no violation against the right against self-incrimination by compelling Napier's presence by subpoena.

Defendant further argues that the statement given at the inquest should not have been admitted because he had taken medication at the time the statement was made. This question is controlled by a determination from all of the circumstances as to whether the statement was given voluntarily, and not through inducement, violence, threats or other improper influences so as to overcome the free will of the accused. *Smith v. State*, (1981) Ind., 419 N.E.2d 743; *Battle v. State*, (1981) Ind., 415 N.E.2d 39. The defendant took Valium four times a day, pursuant to a doctor's prescription, in order to control spasms. This drug was taken regularly. The investigators at the fire marshal's inquest asked the defendant about the drug's effect:

"Mr. Rutherford: Do you feel in anyway (sic) that the medication you're on today is affecting your answers or the truthfulness to anything you're saying?

Mr. Napier: No."

The record also shows that before the questioning, the defendant read and signed a printed waiver of his rights. The investiga-tors also questioned him to ascertain whether he actually understood the implications of his waiver. There is no evidence supporting the defendant's statement that the drugs affected him to such an extent that a statement was not knowingly and voluntarily made.

## VI

Finally, Defendant alleges that the evidence is insufficient to sustain his convictions since there was only circumstantial evidence that merely established he had an opportunity to commit the crime.

■ This court does not reweigh the evidence or judge the credibility of witnesses and will consider only that evidence most favorable to the State and all reasonable inferences drawn therefrom. When there is substantial evidence of probative value to support each element of the offense, the finding of the trier of fact will not be disturbed. *Jackson v. State*, (1980) Ind., 402 N.E.2d 947, 948. It is also well settled that on review this Court does not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the finding. *Hall v. State*, (1980) Ind., 405 N.E.2d 530, 535.

■ The defendant concedes that the State produced substantial evidence of probative value showing the fire was arson and that Jean Napier died as a result of the fire. However, he argues that there was insufficient evidence that he set the fire and killed his wife. Although the evidence was circumstantial and was in conflict in some respects, there was, nevertheless, sufficient evidence from which the jury could reasonably find or infer that the defendant did set the fire and did purposely kill his wife in so doing. There was testimony that the defendant and his wife argued loudly on each of two days preceding the fire and the defendant did not deny this. He admitted that they had a loud argument about 3:00 a.m., on the morning of the fire. There was testimony that the fire was set in the bed-

room and the path it took indicated accelerants were used. Traces of kerosene were found in and about the room. There was also testimony that the presence of accelerants were not apparent to other firemen who arrived on the scene. There was testimony that Jean Napier was lying in an area where she would not be directly contacted by the fire which led one of the expert witnesses to believe that she was not overcome by the fire but that she had been disabled by injuries, one of them being a severe blow to the head. There was also some conflict as to whether the victim's teeth were knocked loose prior to the fire or during the intubation process at the hospital. One witness testified that her clothing was not burned and that her body was not directly burned by the flames but was affected by the heat of it to the extent that her body was more in a state of being "baked." This testimony was also refuted by other witnesses. The neighbors who heard the loud arguments saw the defendant leave his home on the morning in question and shortly thereafter saw smoke coming from the house. Defendant was confined to a wheelchair and drove a specially equipped van so that he was able to get into it and drive it. There were other witnesses who stated they saw the defendant leave before the fire would have started and could not place the defendant at home at that time. The jury heard all of the above testimony and assigned whatever weight and credibility to the testimony as it deemed necessary. There was, therefore, sufficient evidence before the jury, admittedly circumstantial, from which it could infer and find that the defendant did, in fact, physically strike his wife and set the house on fire in order to cause her death. Circumstantial evidence alone may support a murder conviction so long as a reasonable man could find each element of the crime therefrom beyond a reasonable doubt. *Brewer v. State,* (1981) Ind., 417 N.E.2d 889, 892; *Jackson v. State,* (1980) Ind., 402 N.E.2d 947, 948.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, and HUNTER, JJ., concur.

PRENTICE, J., concurs in result.