46 F.3d 1133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donzell GERALD, Petitioner-Appellant,
v.
Jack R. DUCKWORTH and Attorney General of the State of
Indiana, Respondents-Appellees.
 No. 93-1192.
 United States Court of Appeals, Seventh Circuit.
 Submitted: Dec. 20, 1994.*
Decided: Jan. 27, 1995.
 
 Before FAIRCHILD, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Donzell Gerald, a prisoner at the Indiana State Reformatory in Pendleton, Indiana, serving a sixty year sentence for a conviction of murder, filed the present petition for a writ of habeas corpus alleging that: (1) the evidence was insufficient to support his state court conviction of murder; (2) he was denied a trial before a fair and impartial judge; (3) the prosecutor engaged in misconduct; and (4) he was denied effective assistance of counsel on appeal and at trial. On direct appeal, the Indiana Supreme Court rejected Gerald's argument regarding the sufficiency of the evidence and affirmed his conviction, Gerald v. State, 490 N.E.2d 336 (Ind. 1986). Gerald then petitioned the state for post-conviction relief arguing that: (1) the prosecution used perjured testimony; (2) the confrontation clause was violated; (3) he was denied a trial before an impartial judge; (4) he received ineffective assistance of counsel at trial and on appeal; and (5) he was deprived of a complete transcript. Post-conviction relief was denied and affirmed by the Indiana Court of Appeals, Gerald v. State, No. 45A03-9006-PC-254 (Ind. App. July 29, 1991) (unpublished). After Gerald's petition to transfer to the Indiana Supreme Court was denied, Gerald filed the instant action in the appropriate United States District Court. 28 U.S.C. Sec. 2254. The district court entered judgment denying Gerald's petition.
 
 
 2
 In reviewing a district court's denial of a petition for a writ of habeas corpus, this court reviews all questions of law de novo, Montgomery v. Greer, 956 F.2d 677, 680 (7th Cir.), cert. denied, 113 S. Ct. 460 (1992). Factual issues that have been determined by the state trial or appellate courts are presumed correct. 28 U.S.C. Sec. 2254(d); Montgomery, 956 F.2d at 680.
 
 
 3
 In denying Gerald's petition, the district court reviewed the sufficiency of the evidence under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 323 (1979) and found the evidence sufficient to support the murder conviction. See Anderson v. Thieret, 903 F.2d 526, 531 (7th Cir. 1990) (holding that facts found by the highest court of a state are presumed correct). Although the majority of Gerald's claims regarding the impartiality of the trial judge had been held to be waived by the Indiana Court of Appeals in the post-conviction proceeding, the district court considered the merits of the claims because Gerald also alleged ineffective assistance of counsel. See Coleman v. Thompson, 501 U.S. 722 (1991). The district court found no constitutional error. With regard to the alleged partiality in the state trial judge's evidentiary rulings, the district court also found no constitutional error in light of precedent denying federal habeas corpus relief for errors of state law. See Estelle v. McGuire, 112 S. Ct. 475, 480 (1991); Bell v. Duckworth, 861 F.2d 169 (7th Cir. 1988), cert. denied, 489 U.S. 1088 (1989). With regard to the trial judge's alleged partiality in failing to instruct the jury regarding circumstantial evidence, the district court found no constitutional violation. The district court next addressed Gerald's allegations of prosecutorial misconduct, finding that Gerald failed to present the majority of these claims to the state courts and, therefore, these claims were procedurally defaulted. With regard to the non-defaulted misconduct claims, the district court concluded that the record does not establish that the prosecutor knowingly used perjured testimony or that the prosecutor's actions violated Gerald's right of confrontation. Finally, the district court concluded that Gerald received the effective assistance of counsel both at trial and on appeal.
 
 
 4
 After reviewing the record de novo, we AFFIRM for the reasons stated in the attached Memorandum and Order of the district court dated December 18, 1992.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 NORTHERN DISTRICT OF INDIANA
 SOUTH BEND DIVISION
 Donzell Gerald, Petitioner
 
 5
 v.
 
 
 6
 Jack Duckworth; and Indiana Attorney General, Respondents
 
 Civil No. S 92-372(S)
 MEMORANDUM AND ORDER
 
 7
 ALLEN SHARP, Chief Judge.
 
 
 8
 On June 15, 1992, pro se petitioner, Donzell Gerald, an inmate at the Indiana Reformatory, filed a petition seeking relief under 28 U.S.C. Sec. 2254. The return filed by the respondents on September 3, 1992, demonstrates the necessary compliance with Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982). This court has also examined the Traverse filed by the petitioner on November 9, 1992, along with proposed Interrogatories directed to Edward Irons and John Roby. The state court record has been filed and examined pursuant to the mandates of Townsend v. Sain, 372 U.S. 293 (1963).
 
 
 9
 The petitioner was convicted in the Lake Superior Court of one count of murder and was sentenced by Judge James Letsinger of that court to a term of 60 years imprisonment. A direct appeal was taken to the Supreme Court of Indiana and that court unanimously, speaking through then Justice, now Chief Justice Shepard, affirmed the aforesaid conviction on the sole and single issue of the sufficiency of evidence. Thereafter, this petitioner sought post-conviction relief in the state trial court and that court denied such relief. That denial was affirmed by the Third District of the Court of Appeals of Indiana, speaking through Judge Garrard on July 29, 1991, and joined in by Judges Hoffman and Conover in an unpublished memorandum decision. For the immediate reference of all concerned, the memorandum decision is marked as Appendix "A", attached hereto and incorporated herein.
 
 
 10
 The basic facts with reference to the crime are more than adequately outlined in the opinion of the Supreme Court of Indiana in Gerald v. State, 490 N.E.2d 336 (Ind. 1986). With reference to the decision of the Court of Appeals entered on July 29, 1991, the Supreme Court of Indiana denied transfer.
 
 
 11
 The petitioner alleges that there was insufficient evidence to support his conviction. Justice Stewart, speaking for the Supreme Court of the United States in Jackson v. Virginia, 443 U.S. 307 (1979), stated:
 
 
 12
 A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in Sec. 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. See 28 U.S.C. Sec. 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur -- reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right -- is not one that can be so lightly abjured.
 
 
 13
 Id. at 323. Furthermore, the Supreme Court in Jackson held:
 
 
 14
 We hold that in a challenge to a conviction brought under 28 U.S.C. Sec. 2254 -- if the settled procedural prerequisites for such a claim have otherwise been satisfied -- the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt.
 
 
 15
 Id. (footnote omitted). See also Sumner v. Mata, 449 U.S. 539 (1981); Dooley v. Duckworth, 832 F.2d 445 (7th Cir. 1987), cert. denied, 485 U.S. 967 (1988); United States ex rel. Haywood v. O'Leary, 827 F.2d 52 (7th Cir. 1987); Bryan v. Warden, Indiana State Reformatory, 820 F.2d 217 (7th Cir. 1987), cert. denied, 484 U.S. 867 (1987); Shepard v. Lane, 818 F.2d 615 (7th Cir.), cert. denied, 484 U.S. 929 (1987); and Perri v. Director, Department of Corrections, 817 F.2d 448 (7th Cir.), cert. denied, 484 U.S. 843 (1987).
 
 
 16
 A review of the record in the light most favorable to the prosecution convinces the court that a rational trier of fact could readily have found the petitioner guilty beyond a reasonable doubt of murder.
 
 
 17
 Following Jackson, supra, there is an increasingly long line of cases in this circuit that suggest that the facts found by the highest court of a state are presumed correct. The most recent statement of that principle is found in Andersen v. Thieret, 903 F.2d 526, 531 (7th Cir. 1990). The Seventh Circuit in Branion v. Gramly, 855 F.2d 1256, 1266 (7th Cir. 1988), cert. denied, 490 U.S. 1008, speaking through Judge Easterbrook, addressed the issue of whether the evidence is sufficient to sustain the conviction:
 
 
 18
 The only appropriate inquiry for this court under Jackson is whether, assuming the jury resolved all disputes in the state's favor and drew all inferences from that evidence, it would have been rational to convict. Not whether we would convict, but whether thoughtful people would convict.
 
 
 19
 Id.
 
 
 20
 The Supreme Court revisited this issue in Wright v. West, 112 S.Ct. 2482, 2493-93 (1992), and took the occasion to accentuate the parameters of this review:
 
 
 21
 In Jackson, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutionally sufficiency review. We said that "all of the evidence is to be considered in the light most favorable to the prosecution," 443 U.S. at 319; that the prosecution need not affirmatively "rule out every hypothesis except that of guilt," Id. at 326; and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolve any such conflicts in favor of the prosecution, and must defer to that resolution." ibid.
 
 
 22
 Id.
 
 
 23
 Here, the petitioner was convicted of murder. Murder is defined in Indiana Code 35-42-1-1, as follows:
 
 Sec. 1. A person who:
 
 24
 (1) knowingly or intentionally kills another human being; or
 
 
 25
 (2) kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape or robbery;
 
 
 26
 commits murder, a felony.
 
 
 27
 Certainly, circumstantial evidence is a part of the conceptual mix that is involved in the formulation under Jackson, supra. See United States v. Greer, 866 F.2d 908, 923 (7th Cir. 1989), a case on direct appeal from a United States district court, and Woodruff v. Lane, 818 F.2d 1369, 1374 (7th Cir. 1987), an appeal in a case involving 28 U.S.C. Sec. 2254. The evidence recited by Justice Shepard and found in the record more than satisfies the demands of the aforesaid Indiana statute.
 
 
 28
 Numerous complaints are made here with regard to the conduct of the state trial judge. Some of those complaints parallel those made by this petitioner in the state court as reflected in the memorandum decision of the Court of Appeals of Indiana on July 29, 1991. Some of those claims were held to be waived by the Court of Appeals of Indiana, as reflected in the attached opinion of Judge Garrard. With regard to those claims that are waived, there is an interplay between those claims and claims regarding ineffective assistance of counsel under the formulation of cause and prejudice. See Coleman v. Thompson, 111 S.Ct. 2546 (1991). Although not directly relevant to the decision in this case, there is a large body of law in the federal court system regarding the disqualification of judges.[1] On this issue, this court also notes that a court in a proceeding of this nature must presume the facts as true, but is not bound by the unsupported legal or factual conclusions. The applicable body of federal law is certainly worthy of consideration and thought in regard to judicial disqualification as it comes up on collateral review under Sec. 2254.
 
 
 29
 More importantly, examining the Traverse filed on November 9, 1992, reference is made an issue with regard to a change of judge under the law of Indiana. In civil cases, changes of judge in Indiana are governed by Ind. Trial Rule 76. Recently, the Supreme Court of Indiana has modified the rules with reference to changes of venue in Indiana. See I.C. 34-2-9-1 (Procedure for change of venue). However, whatever the ruling should have been with regard to a change of judge under the law of Indiana, the same does not here raise any constitutional issue. In fact, the Court of Appeals of Indiana refers to the motion for change of judge at the post-conviction proceeding which was filed on October 23, 1987, some nine months after the petition was filed, and the Court of Appeals of Indiana simply held that such was not timely under the law of Indiana and that the petitioner here was not entitled to a change of venue on the basis of that record. That decision is altogether correct under the law of Indiana, and no constitutional violation is implicated.
 
 
 30
 The only conduct of Judge Letsinger that this petitioner is complaining about occurred in the courtroom in his judicial capacity as he ruled on various matters and issues while conducting a state court criminal trial. He made evidentiary rulings with which this petitioner is in obvious disagreement. Most, if not all of those evidentiary rulings were made on the basis of state law. This petitioner cannot use Sec. 2254 simply to allege errors of state law. The relation of state law to the scope of relief available in a habeas action is pervasive. In Coleman v. O'Leary, 845 F. 2d 696, 699-700 (7th Cir. 1988), cert. denied, 488 U.S. 972 (1988), the Seventh Circuit, speaking through Judge Coffey, underscored the magnitude of recognizing the meaning of state law as explained by state courts:
 
 
 31
 A judgment of a state court on a question of state law 'conclusively establishe[s]' the meaning of that law. Bute v. Illinois, 333 U.S. 640, 668 68 S. Ct. 763, 778, 92 L.Ed.986 (1948). '[I]t is for the [state] courts to say under its law what duty or discretion the court may have had .... We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied. We cannot treat a mere error of state law, if one has occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.' Gryger v. Burke, 334 U.S. 728, 731, 68 s.Ct. 1256, 1257, 92 L.Ed. 1683 (1948). 'Whether state statutes shall be construed one way or another is a state question, the final decision of which rests with the states. The due process clause in the Fourteenth Amendment does not take up the statutes of the several States and make them the test of what it requires; nor does it enable this Court to revise the decisions of the state courts on questions of state law.' Herbert v. Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926). 'We are of course bound by a State's interpretation of its won statute and will not substitute our judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of whether that evidence supports the findings of a state court.' Garner v. Louisiana, 368. U.S. 157, 166, 82 S.Ct. 248, 253, 7 L.Ed.2d 207 (1961). 'We have no power to revise judgments on questions of state law.' Henry v. Mississippi, 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965).
 
 
 32
 Id. at 699-700 (quoting Cole v. Young, 817 F.2d 412, 429-30 (7th Cir. 1987) (dissenting opinion).
 
 
 33
 Certainly, this court does not sit as a super appeals court from decisions of the Supreme Court of Indiana and as the aforementioned discussion indicates--federal courts do not sit to correct errors made by state courts in the interpretation and application of state law. This precept was recently underscored by the Supreme Court in Estelle v. McGuire, 112 S.Ct. 475, 480 (1991):
 
 
 34
 [I]nquiries into decisions based on state law, such as an evidentiary ruling are not a] part of a federal court's habeas review of a state conviction. We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' Lewis v. Jeffers, 497 U.S. , , 110 S.Ct. 3092, 3102 (1990); see also Pulley v. Harris, 465 U.S. 37, 41 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. Sec. 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam).
 
 
 35
 Id. at 480. Therefore, this court finds that this allegation fails to state an actionable claim based on Sec. 2254. The collateral review that is envisioned by Sec. 2254 focuses on violations of the federal Constitution. See Bell v. Duckworth, 861 F.2d 169 (7th Cir. 1988), cert. denied, 489 U.S. 1088 (1989).
 
 
 36
 With reference to these rulings on questions of state law, and especially those involving rulings on evidence, the same are not reviewable under Sec. 2254 unless there is a denial of fundamental fairness or the denial of a specific constitutional right. The petitioner bears a very heavy burden in this regard. For a most recent application of these concepts, see Bucht v. Abrahamson, 944 F.2d 1363, 1366 (7th Cir. 1991).
 
 
 37
 The rulings with regard to the identification of a suspect during a photographic display do not transgress any established constitutional principle. Neither does the admission of a weapon.
 
 
 38
 The petitioner complains that the state trial court did not sua sponte instruct the jury regarding circumstantial evidence. In this regard, the state trial court could well have given Indiana Pattern Jury Instruction 12.01, but when one looks at the instructions as a whole, the omission to do so is not constitutional error. The Indiana Supreme Court dealt with this specific topic in the petitioner's direct appeal in Gerald v. State, 490 N.E.2d 336. In so doing, the court evaluated all of the evidence and concluded:
 
 
 39
 We neither reweigh the evidence nor judge the credibility of the witnesses on appeal; any conflicting evidence was for the jury to resolve. Napier v. State (1983), Ind., 445 N.E.2d 1361. We consider only the evidence most favorable to the judgment together with all inferences reasonably drawn from that evidence. Id. Circumstantial evidence is sufficient to support a conviction so long as a reasonable person could find that the State proved each element of the crime beyond a reasonable doubt. Jackson v. State (1980), 273 Ind. 49, 402 N.E.2d 947.
 
 
 40
 The evidence most favorable to the judgment sufficed to convict Gerald of the murder. The proof of his struggle with the victim immediately before the four gun shots, his hurried activity thereafter, and his possession of her .25 gun, warranted a reasonable person in concluding beyond a reasonable doubt that appellant killed the victim. See e.g. Napier v. State, supra.
 
 
 41
 Id. at 337.
 
 
 42
 This court also dealt with the ramifications of the use of circumstantial evidence in the analysis on the issue of whether there was sufficient evidence to support the conviction. More importantly, in Henderson v. Kibbe, 431 U.S. 145, 154 (1977), the Supreme Court indicated that an erroneous jury instruction is only reachable in a habeas action, if the instruction "by itself so infected the entire trial that the resulting conviction violates due process." Id. (quoting Cupp. v. Naughten, 414 U.S. 141, 147 (1973)). "An omission or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Id. at 155. See also United States ex rel. Bonner v. DeRobertis, 798 F.2d 1062, 1068 (7th Cir. 1986). Here, the lack of the instruction did not violate due process.
 
 
 43
 Further, this petitioner complains about alleged errors in the post-conviction proceedings held in the state trial court. Certainly, he is not able to complain with regards to the conduct of his counsel in those proceedings. See Pennsylvania v. Finley, 481 U.S. 551 (1987); Prihoda v. McCaughtry, 910 F.2d 1379, 1382 (7th Cir. 1990), and Morrison v. Duckworth, 898 F.2d 1298 (7th Cir. 1990). More importantly, in United States ex rel. Correa v. O'Leary, No. 87 C 4247, 1988 U.S. Dist. LEXIS 1108 (N.D.Ill. 1988), Judge Plunkett explained this issue very succinctly:
 
 
 44
 [I]nfirmities in a state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction. Noble v. Singer, 351 F.2d 673, 678 (8th Cir. 1965), cert. denied, 385 U.S. 853 (1966). There is no federal constitutional requirement that a state provide a means of post-conviction review of state convictions. Williams v. State of Missouri, 640 F.2d 140 (8th Cir.), cert. denied, 451 U.S. 990 (1981).
 
 
 45
 Errors or defects in the state post-conviction proceeding do not, ipso facto, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings .... Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a proceeding collateral to detention of appellant and not on the detention itself, which we have found to be lawful. Id. at 143-44. We agree with this statement of law and it is dispositive of [petitioner's] final claim of error. Accord Millard v. Lynaugh, 810 F.2d 1403, 1410 (5th Cir. 1987); Kirby v. Dutton, 794 F.2d 245 (6th Cir. 1986); Vail v. Procunier, 747 F.2d 277 (5th Cir. 1984); Bradshaw v. Oklahoma, 398 F. Supp. 838 (E.D. Okla. 1975); Stokely v. Maryland, 301 F. Supp. 653 (D. Md. 1969). But see Dickerson v. Walsh, 750 F.2d 150 (1st Cir. 1984).
 
 
 46
 Id.
 
 
 47
 Although the Seventh Circuit has not directly addressed this issue, a number of other circuits have evaluated this issue.[2] It is apparent that error in collateral state proceedings will not be the basis of habeas relief. Therefore, this court lacks jurisdiction under 28 U.S.C. Sec. 2254 to hear complaints regarding the propriety of state postconviction relief proceedings.
 
 
 48
 The petitioner complains about prosecutorial misconduct which was defined by the Supreme Court of the United States in United States v. Hasting, 461 U.S. 499 (1983). However, this issue was not presented to the state courts in any way and is waived. See Resnover v. Pearson, 754 F.Supp. 1374 (N.D.Ind. 1991), aff'd, 965 F.2d 1453 (7th Cir. 1992), and Schiro v. Clark, 754 F.Supp. 646 (N.D.Ind. 1990), aff'd, 963 F.2d 962 (7th Cir. 1992). Specifically, this allegation of prosecutorial misconduct refers to the above described witness Irons testifying that witness Brooks had identified this petitioner from a photo display. Prosecutorial conduct does not implicate a specific provision of the Bill of Rights unless it is so egregious as to deprive the petitioner of a fundamentally fair trial. See Rose v. Duckworth, 769 F.2d 402, 405 (7th Cir. 1985).
 
 
 49
 The petitioner asserts that his due process right to a fair trial has been transgressed by prosecutorial misconduct. In order to assert this claim, the petitioner must illustrate that the prosecutor's statements "'so infected the trial with unfairness as to make the resulting conviction a denial of due process."' Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). In evaluating this unfairness, the Seventh Circuit in United States v. Chaimson, 760 F.2d 798 (7th Cir. 1985), has indicated courts "are to consider the prosecutor's conduct not in isolation, but in the context of the trial as a whole, to determine if such conduct was 'so inflammatory and prejudicial to the defendant ... as to deprive him of a fair trial."' Id. at 809 (7th Cir. 1985) (quoting United States v. Zylstra, 713 F.2d 1332, 1339 (7th Cir.), cert. denied, 464 U.S. 965 (1983). Here, petitioner's claim does not sufficiently comport with the precepts explained in the aforementioned caselaw.
 
 
 50
 More fundamental to the failure of the petitioner's claim and a pivotal issue in habeas claims is whether a petitioner is barred from pursuing the claim because of a procedural default. In Coleman v. Thompson, U.S. , 111 S.Ct. 2546 (1991), the United States Supreme Court, speaking through Justice O'Connor explained that "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id at 2565. Here, the Indiana Supreme Court specifically found that the petitioner had waived this issue and such action was the basis for the independent state action precluding federal habeas corpus review. Therefore, this court finds that this allegation is procedurally defaulted.
 
 
 51
 The petitioner also alleges prosecutorial misconduct in knowingly using perjured testimony. An Officer Howard testified that he found three empty shell casings from a .25 caliber automatic. When Detective Irons testified, he testified in part as follows:
 
 
 52
 Q. Okay. And did you find any spent shells there?
 
 
 53
 A. Yes.
 
 
 54
 Q. And who found those?
 
 
 55
 A. I can't say specifically who. I think there was about three (3) or four (4) spent shells. I can't say specifically who found all of them, but I located one (1) personally myself.
 
 
 56
 Inconsistency between witnesses does not automatically add up to perjury. Almost every jury is instructed to the effect that different people may see and hear the same events differently, and it is for the jury to decide whether any such inconsistencies are the result of innocent mistake or intentional falsehood. See United States ex rel. Burnett v. Illinois, 619 F.2d 668, 674 (7th Cir.), cert. denied, 449 U.S. 880 (1980). It takes a great deal more than what has been referred to here to establish that a prosecutor knowingly let perjured testimony stand in the record.
 
 
 57
 Apparently, this petitioner is claiming a denial of the right to confront witnesses guaranteed by the Sixth Amendment of the Constitution of the United States. However, both Brooks and Irons were examined and cross-examined in open court under oath. Irons testified to events that he personally saw. The Confrontation Clause was not violated. Compare Bruton v. United States, 391 U.S. 123 (1968).
 
 
 58
 This petitioner complains with reference to the ineffective assistance of trial counsel under Strickland v. Washington, 466 U.S. 668 (1984), and ineffective assistance of appellate counsel under Evitts v. Lucey, 469 U.S. 387 (1985).
 
 
 59
 On this subject, this court is aware of the decision of the Court of Appeals of Indiana on the subject. The Indiana Court of Appeals indicated that the petitioner waived this issue. Certainly, this court may presume as correct the facts established in the record and referred to by state appellate courts, even though it must examine de novo the legal conclusions that spring therefrom. Miller v. Fenton, 474 U.S. 104 (1985). This court notes that the petitioner's abovementioned claims deal with ineffective assistance of counsel under the Sixth Amendment of the United States Constitution. State court factual findings made in the course of deciding an ineffectiveness claim are subject to the presumption of correctness standard of 28 U.S.C. Sec. 2254(d). Galowski v. Murphy, 891 F.2d 629, 635 (7th Cir. 1989), cert. denied, 495 U.S. 921 (1990). Section 2254(d) provides that "a determination after a hearing on the merits of a factual issue, made by a state court of competent jurisdiction ... shall be presumed to be correct" unless "the merits of the factual dispute were not resolved in the state court hearing." Therefore, under section 2254(d), the court must defer to the state court's findings regarding the underlying facts of who did what to whom, when, where, and why. Weidner v. Thieret, 866 F.2d 958, 961 (7th Cir. 1989).
 
 
 60
 On the other hand, a state court's findings that counsel performed adequately and that any shortcomings in his representation did not prejudice the defendant's case are not findings of fact under section 2254(d), but are instead mixed questions of law and fact subject to independent review. Kimmelman v. Morrison, 477 U.S. 365 (1986); Strickland v. Washington, 466 U.S. 668 (1984); Balfour v. Haws, 892 F.2d 556, 563 (7th Cir. 1989). The court has therefore made an independent examination of the state court record in order to determine whether counsel rendered effective assistance. See Miller v. Fenton, 474 U.S. 104 (1985).
 
 
 61
 This court has also collected a substantial supply of recent ineffective assistance of counsel cases in United States v. Grizales, 859 F.2d 442 (7th Cir. 1988), Judge Eschbach, speaking for the court stated:
 
 
 62
 The Supreme Court has instructed that in evaluating the performance of a trial attorney we are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. at 2054. Appellant "has a heavy burden in proving a claim of ineffectiveness of counsel." Jarrett v. United States, 822 F.2d 1438, 1441 (7th Cir. 1987) (citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064). The Supreme Court has further cautioned appellate courts to resist the temptation to "second-guess" the actions of trial counsel after conviction. Id. It is clear that the performance of trial counsel should not be deemed constitutionally deficient merely because of a tactical decision made at trial that in hindsight appears not to have been the wisest choice. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; United States v. Kennedy, 797 F.2d 540, 543 (7th Cir. 1986).
 
 
 63
 See also Fagan v. Washington, 942 F.2d 1155 (7th Cir. 1991); D.S.A. v. Circuit Court Branch 1, 942 F.2d 1143 (7th Cir. 1991), cert. denied, 112 S.Ct. 1196 (1992); United States ex rel. Simmons v. Gramley, 915 F.2d 1128 (7th Cir. 1990); Page v. United States, 884 F.2d 300 (7th Cir. 1989); United States v. Adamo, 882 F.2d 1218 (7th Cir. 1989); United States ex rel. Thomas v. O'Leary, 856 F.2d 1011 (7th Cir. 1988); Buelow v. Dickey, 847 F.2d 420 (7th Cir. 1988), cert. denied, 489 U.S. 1032 (1989); United States v. Queen, 847 F.2d 346 (7th Cir. 1988); United States v. Gerrity, 804 F.2d 1330 (7th Cir. 1986); and United States v. Liefer, 778 F.2d 1236 (7th Cir. 1985). But see Clark v. Duckworth, 770 F.Supp. 1316 (N.D.Ind. 1991).
 
 
 64
 With regard to an allegation that counsel failed to interview or call witnesses, there is some burden to establish that any testimony from those witnesses would have been enough to change the result in the case. Specifically, in order for counsel's failure to call witnesses to equate with an inference of ineffective representation, the petitioner must illustrate that the witness would have provided exculpatory testimony. United States v. Muehlbauer, 892 F.2d 664, 669 (7th Cir. 1990). Furthermore, as indicated in United States ex rel. Partee v. Lane, 926 F.2d 694 (7th Cir. 1991), cert. denied, U.S. , 112 S.Ct. 1230 (1992), the Seventh Circuit explained that in illustrating the exculpatory testimony, the petitioner must first indicate the contents of the witness's testimony and demonstrate its admissibility in court; and then explain how the testimony would have produced a different result. There is no such showing here.
 
 
 65
 It would appear that the focus of many of these witnesses had to do with the arrest of this petitioner and not his guilt or lack of guilt with regard to the charged offense. For example, it is asserted that Julius Taylor could provide an alibi when in fact all he testified to in the post-conviction proceedings was that he was merely present at the petitioner's arrest. In any event, defense counsel indicated that he made sincere efforts to locate Mr. Taylor at the relevant time, but was unable to do so. The petitioner also claims that a Georgia Savich should have been called as a witness to testify that this petitioner was not armed when he was arrested. Her testimony at the post-conviction proceedings indicated that she witnessed the arrest and that she did not see a weapon. The exact timing of her observations is not entirely clear. The record is silent as to indicating that anyone knew that Georgia Savich was a witness until two months before the post-conviction hearing and well after the trial of this case.
 
 
 66
 The petitioner also complains that Danielle Young was not called as a witness and indicates that Young would have recanted an earlier statement given to the police. There is simply no evidence to support that claim in the record. Defense counsel testified that the statement Young gave would have placed this petitioner with the victim earlier in the evening and discussing the use of drugs. The defense counsel opined that it was his strategy that Danielle Young could do more harm than good to the cause of this petitioner in trial. That is an on-the-scenes tactical decision made by counsel that should not be gainsaid under the Sixth Amendment and Strickland, supra.
 
 
 67
 Again, there is a bald assertion that one Ronnie Williams, a witness for the prosecution, was a prime suspect in the murder and an informant for the investigating detective. Other than those bald assertions, the record is silent on that one.
 
 
 68
 The petitioner also complains with regard to the failure of his attorney to have fingerprints lifted from the gun and to have the spent shell casings examined. There is no indication that any such evidence would have been of any assistance to this petitioner. It was the worry of defense counsel that the results could be damning rather than helpful.
 
 
 69
 The petitioner also complains that his counsel was ineffective for failing to depose prosecution witnesses Williams and Irons. Defense counsel talked to Williams in advance of trial, and was prepared to cross-examine him. The issue of preparation with regard to the witness Irons was not explored in the post-conviction hearing. Without defining precisely how, the petitioner apparently thinks that something might have been disclosed in a deposition of Irons that would have been useful in cross examination. Exactly what that is is not spelled out with any specificity.
 
 
 70
 These contentions with regard to ineffective assistance of counsel are in a large measure based on speculation and surmise, and it simply takes more to establish ineffective assistance of counsel. See United States ex rel. Simmons v. Gramley, 915 F.2d 1128, 1134 (7th Cir. 1990).
 
 
 71
 Additionally, the petitioner argues that defense counsel conceded too much in his closing argument with regard to the weapon which was taken from him. The uncontradicted evidence in the record was that such a weapon was removed from the petitioner. There is some analogy to the old story once told by Abraham Lincoln that simply arguing that the tail of a dog is the fifth leg does not make it so. Neither does the Sixth Amendment of the Constitution of the United States require a defense counsel to argue in the face of uncontradicted facts. This again is a judgment tactical call that should not be gainsaid except for the clearest showing of ineffectiveness. There is none here. The court has the benefit of the processes considered by the defense counsel in the record regarding the post-conviction relief hearing. There is no clear showing of substandard professional performance, and there is no showing of actual prejudice springing therefrom. The same is true with regard to the claims of ineffective assistance of appellate counsel.
 
 
 72
 This court has examined with care the filings of this pro se petitioner on November 9, 1992. First, a word needs to be said with regard to the attempted tender of interrogatories to Edward Irons and John Roby, who were witnesses against this petitioner. The Supreme Court of the United States recently narrowed the circumstances under which a United States district court sitting in a case brought under 28 U.S.C. Sec. 2254 is required to hold an evidentiary hearing. Compare Townsend v. Sain, 372 U.S. 293 (1963) with Keeney v. Tamayo-Reyes, 112 S.Ct. 1715 (1992). It is not the proper function of this court to sit as a court of common law review to review on the basis of common law error under state law. It is the fundamentally important task of this court under Sec. 2254 to examine this record for exhausted issues that raise constitutional questions.
 
 
 73
 There is no basis presented in this record for an evidentiary hearing. Therefore, there is no basis or need for this court to go beyond the written record. Therefore, this court most respectfully declines to exercise authority under Rule 33 of the Federal Rules of Civil Procedure to tender interrogatories to the witnesses Irons and Roby.
 
 
 74
 A careful review of the record fails to disclose any basis for the grant of relief under 28 U.S.C. Sec. 2254. The petition is DISMISSED WITHOUT PREJUDICE. IT IS SO ORDERED.
 
 DATED: December 18, 1992
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 The Ninth Circuit in United States v. Sibla, 624 F.2d 864, 868 (9th Cir. 1980), outlined the procedures for recusal of a federal judge. The court explained that a motion brought under Sec. 144 will raise a question concerning recusal under Sec. 455(b)(1) as well; the test for personal bias or prejudice is the same in both. Sec. 455 modifies Sec. 144 in requiring the judge to go beyond the Sec. 144 affidavit and consider the merits of the motion pursuant to Sec. 455(a) and (b)(1)
 The statute at issue is Title 28 U.S.C. Sec. 144, which states:
 Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.
 As amended May 24, 1949, c. 139, Sec. 65, 63, Stat. 99.
 The aforesaid affidavit under Sec. 144 must allege specific facts and not mere conclusions or generalities. A United States district trial judge is presumed impartial, and a substantial burden is imposed on the affiant to demonstrate that such is not the case. Only after a judge finds a legal sufficient claim of personal bias must another judge be assigned to the case.
 This concept has been thoroughly evaluated by many courts. The opinion in United States v. International Business Machines Corporation, 475 F.Supp. 1372 (S.D.N.Y. 1979), is an important object lesson provided by Judge David N. Edelstein, who presided over one of the federal judiciary's longest and most complicated antitrust trials, in the middle of which the defendant, not pleased with various rulings of Judge Edelstein, tried to require his recusal. The aforesaid case was affirmed by In Re International Business Machines Corporation, 618 F.2d 923 (2d Cir. 1980). The holding in the abovementioned case is that to be legally sufficient, an affidavit under Sec. 144 must enable the judge to rule "whether the reasons and facts stated in the affidavit give fair support to the charge of a bent of mind that might impede the impartiality of the judgment" Id. See also United States v. Bryant, 716 F.2d 1091 (6th Cir. 1983) (provides that Secs. 144 and 455 must be construed together, and that disqualification under Sec. 455(a) must be predicated as previously under Sec. 144, upon extra judicial conduct, rather than judicial conduct [citing City of Cleveland v. Krupansky, 619 F.2d 576 (7th Cir. 1980)].); New York City Development Corp. v. Hart, 796 F.2d 976 (7th Cir. 1986) (held that Sec. 455(a) requires disqualification only when a judge's decision might "reasonably" be questioned. The inquiry is objective, from the point of view of a reasonable person with access to all of the facts. Id. at 980.); Union Carbide Corp. v. U.S. Cutting Service, Inc., 782 F.2d 710 (7th Cir 1986) (a case which involved District Judge Getzendanner, it was stressed that the test is whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought, would entertain a significant doubt that justice would be done in the case [citing Pepsico, Inc. v. McMillen, 764 F.2d 458, 460 (7th Cir. 1985)]. See also United States v. Murphy, 768 F.2d 1518, 1538 (7th Cir. 1985).)
 Many of the aforesaid authorities have previously been summarized by this court in McChristion v. Hood, 551 F.Supp. 1001 (N.D.Ind. 1982). The Court of Appeals has also dealt with this subject In the Matter of: National Union Fire Insurance of Pittsburgh, Pennsylvania and Allstate Insurance Company, 839 F.2d 1226 (7th Cir. 1988). See also United States v. Barnes, No. 89-2120 (7th Cir. August 9, 1990). For an application of 28 U.S.C. Sec. 144 in a lighter vein, see Huff v. Standard Life Insurance Company, 643 F.Supp. 705 (S.D.Fla. 1986). See also Person v. General Motors Corporation, 730 F.Supp. 516 (W.D.N.Y. 1990). For an example of where judicial disqualification exists, see United States v. Pepper & Potter, Inc., 677 F.Supp. 123 (E.D.N.Y. 1988). But compare Grand Entertainment Group, Ltd. v. Arazy, 676 F.Supp. 616 (E.D.Pa. 1987).
 
 
 [2]
 For example, the Eighth Circuit Court of Appeals in Mitchell v. Wyrick, 727 F.2d 773 (8th Cir.), cert. denied, 469 U.S. 823. (1984) explained:
 Habeas corpus is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. Sec. 2254(a). Thus, Sec. 2254 gives federal courts jurisdiction to determine the constitutionality of a state criminal conviction, but does not authorize review of state postconviction review proceedings. "Even where there may be some error in state postconviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a proceeding collateral to detention itself...." Williams v. Missouri, 640 F.2d 140, 144 (8th Cir.), cert. denied, 451 U.S. 990 (1981).
 Mitchell, 727 F.2d at 774.